UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LYNNE M. FLETCHER-SILVAS,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

    Defendant.

Case No. C17-5707 RSL

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff Lynne Fletcher-Silvas appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which granted in part and denied in part her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

I.    FACTS AND PROCEDURAL HISTORY

Plaintiff is a 56-year-old woman with an eleventh grade education. Administrative Record ("AR") at 46-47. Her past work experience includes work as a receptionist, nurse

aid, membership solicitor, and counter person auto parts.  <u>See</u> AR at 29.  Plaintiff has not engaged in substantial gainful activity since May 23, 2014.  AR at 24.

Plaintiff protectively filed an application for DIB on June 20, 2014.  AR at 21.  Plaintiff asserted that she was disabled primarily due to issues with her knees.  AR at 45.  She underwent surgery to repair meniscus tears in each knee in 2014.  AR at 251, 300.  She also underwent total knee replacement surgeries on each knee, with the left occurring on November 3, 2014, and the right occurring on June 1, 2015.  AR at 316, 399.

The Commissioner denied Plaintiff's claims initially and on reconsideration.  AR at 79-80, 90.  Plaintiff requested a hearing before an ALJ, which took place on January 13, 2016.  AR at 41.

On March 25, 2016, the ALJ issued a decision finding that Plaintiff was disabled from March 23, 2014 until October 31, 2015.  AR at 31.  But the ALJ found that Plaintiff's disability ended on November 1, 2015.  <u>Id.</u>  Plaintiff could perform past relevant work as a receptionist, and could perform alternative work as a data entry clerk or appointment clerk.  AR at 33-35.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 29, 2017.  AR at 1.  The ALJ's ruling therefore became the Commissioner's "final decision" as that term is defined by 42 U.S.C. § 405(g).  Plaintiff filed the present action on September 5, 2017, challenging the Commissioner's decision.  Dkt. 1.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's

denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

### III. EVALUATING DISABILITY

As the claimant, Plaintiff bears the burden of proving that she is disabled within the meaning of the Act. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §

423(d)(2)(A); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. See 20 C.F.R. § 405.1520. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. Id. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. Id. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have such impairments, she is not disabled. Id. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. § 404.1520(d). A claimant whose impairment meets or equals one of the listings for the required 12-month duration is disabled. Id.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 4

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. § 404.1520(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); Tackett, 180 F.3d at 1099- 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

Once the claimant has proved disability, "a presumption of continuing disability arises in her favor." Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985) (citing Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983)). The burden therefore shifts to the Commissioner to prove that the disability ends. See Bellamy, 755 F.2d at 1381.

The Commissioner has established an eight-step evaluation for determining whether disability continues in Title II claims. See 20 C.F.R. § 404.1594. At step one, the Commissioner looks at whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the claimant is no longer disabled. Id. At step two, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in the regulations. 20 C.F.R. § 404.1594(f)(2). If the claimant does, her disability

continues. Id.

If the claimant does not have a listed impairment, the Commissioner moves to step three. At step three, the Commissioner must determine whether medical improvement has occurred. 20 C.F.R. § 404.1594(f)(3). "Medical improvement is any decrease in the severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." Id. If medical improvement has occurred, the Commissioner skips to step five. 20 C.F.R. § 404.1594(f)(3). If not, the Commissioner proceeds to step four. Id.

At step four, the Commissioner must determine whether the claimant's medical improvement is related to her ability to work. 20 C.F.R. § 404.1594(f)(4). Medical improvement is related to the claimant's ability to work if it results in an increase to her RFC. Id. If medical improvement is related to the claimant's ability to work, the Commissioner skips to step six. Id. If not, the Commissioner proceeds to step five. Id.

At step five, the Commissioner examines whether any of two groups of exceptions applies. 20 C.F.R. § 404.1594(f)(5). If one of the first group of exceptions applies, the Commissioner proceeds to step six. Id. If one of the second group of exceptions applies, the claimant's disability will have ended. Id. If neither exception applies, the claimant's disability continues. Id.

At step six, the Commissioner looks at whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If so, the Commissioner proceeds to step seven. Id. If not, the claimant will be found no longer disabled. Id.

At step seven, the Commissioner must reassess the RFC and determine whether the claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If so, the claimant is no longer disabled. Id. If not, the Commissioner proceeds to step eight. Id.

At step eight, the Commissioner evaluates whether the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's increased RFC, age, education, and work experience. 20 C.F.R. § 1594(f)(8). If the claimant can perform other work, then she is no longer disabled. Id. If not, the claimant's disability continues. Id.

## IV. DECISION BELOW

On March 25, 2016, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since May 23, 2014, the disability onset date (20 C.F.R. § 404.1571 *et seq.*).

2. From May 23, 2014 through October 31, 2015, claimant had the following severe impairments: degenerative joint disease of the bilateral knees status post bilateral arthroscopic and total knee replacement surgeries; morbid obesity; hypertension; diabetes mellitus; thyroid disorder (20 C.F.R. § 404.1520(c)).

3. From May 23, 2014 through October 31, 2015, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),

404.1525(d), 404.1526).

4. From May 23, 2014 through October 31, 2015, the claimant had the RFC to perform sedentary work as defined in 20 C.F.R. § 1567(a) with the additional limitations that she could stand or walk for two hours in an eight-hour work day; sit for eight hours in an eight-hour work day; lift or carry 20 pounds occasionally and 10 pounds frequently; occasionally balance, stoop, and climb ramps or stairs; and perform work that did not require her to kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. She needed to avoid concentrated exposure to extreme cold, heat, and vibrations, and even moderate exposure to hazards. She would need to lie down for one hour two times per day and elevate her legs at a 90-degree angle.

5. From May 23, 2014 through October 31, 2015, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

6. From May 23, 2014 through October 31, 2015, considering the claimant's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that she could have performed (20 C.F.R. § 404.1560(c)) & 404.1566).

7. The claimant was under a disability, as defined by the Act, from May 23, 2014 through October 31, 2015 (20 C.F.R. § 404.1520(g)).

8. The claimant has not developed any new impairments since November 1, 2015, so her severe impairments are the same as those that were present from May 23, 2014 through October 31, 2015.

9. As of November 1, 2015, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1594(f)(2)).

10. Medical improvement occurred as of November 1, 2015, the date the claimant's disability ended (20 C.F.R. § 404.1594(b)(1)).

11. The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's RFC (20 C.F.R. § 404.1594(b)(4)(i)).

12. Beginning November 1, 2015, the claimant had the RFC to perform less than the full range of sedentary and light work as defined in 10 C.F.R. § 404.1567(a) with the same limitations as before, except that

she no longer needed to lie down and elevate her legs during the day.

13. Since November 1, 2015, the claimant has been capable of performing past relevant work as a receptionist. This work does not require the performance of work-related activities precluded by the claimant's current RFC (20 C.F.R. § 404.1565).

14. Since November 1, 2015, considering the claimant's age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy that the claimant could also perform, including data entry clerk and appointment clerk (20 C.F.R. §§ 404.1569, 404.1569(a)).

15. The claimant's disability ended November 1, 2015 (20 C.F.R. § 404.1594(f)(7)).

AR at 21-36.

## V. ISSUES ON APPEAL

The issues on appeal are:

A. Whether the ALJ properly assessed Plaintiff's symptom testimony.

B. Whether the ALJ properly assessed the medical evidence.

C. Whether the ALJ accurately formulated Plaintiff's RFC since November 1, 2015, and, accordingly, whether the ALJ's findings regarding Plaintiff's ability to perform past relevant work or other work were proper.

D. Whether, if the Court finds error, it should remand for an award of benefits.

Dkt. 9 at 1.

## VI. DISCUSSION

**A. Evaluation of Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ erred in rejecting her testimony about her symptoms and limitations after November 1, 2015. See Dkt. 9 at 7-15. The Court disagrees.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptom; she does not have to show that the impairment could reasonably be expected to cause the severity of the symptom alleged. Id. The ALJ found that plaintiff met this first step because her medically determinable impairments could reasonably be expected to cause her alleged symptoms. AR at 32.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the court may not substitute its judgment for that of the ALJ. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

The ALJ, finding no evidence of malingering, held that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms after November

1, 2015 were not entirely credible.[2] The ALJ gave three reasons for this determination: (1) Plaintiff's statements were contradicted by the medical record; (2) Plaintiff's testimony was inconsistent with statements she made to her medical providers; and (3) Plaintiff failed to follow her providers' treatment recommendations. See AR 32-33.

### 1. Plaintiff's Statements were Contradicted by the Medical Record

The ALJ's first reason for rejecting Plaintiff's testimony supports his conclusion. While it is true that an ALJ may not reject subjective pain testimony "on the sole ground that it is not fully corroborated by objective medical evidence," Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001), the ALJ may reject such testimony when it is contradicted by the objective medical evidence, see Carmickle v, Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

At the hearing, Plaintiff testified that she had not experienced any improvement in her right knee since having surgery, and experienced only minimal improvement in her left knee. AR at 52. She further testified that she needed to use a cane, and had only minimal mobility. AR at 56, 58-59.

In contrast to Plaintiff's claims of minimal improvement, her physical therapist reported that she demonstrated improved range of motion, and strength. See AR at 32,

---

[2] The Commissioner issued Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (2017) on October 25, 2017, which "eliminat[ed] the use of the term credibility from our sub-regulatory policy" and "clarif[ied] that subjective symptom testimony is not an examination of an individual's character," after the ALJ's decision here. This does not alter the present analysis, however, because even assuming SSR 16-3p applies retroactively, the Ninth Circuit has held that SSR 16-3p is consistent with existing Ninth Circuit precedent on evaluation of a claimant's testimony. See Trevizo, 871 F.3d at 678 n.5.

473. Plaintiff's gait mechanics had normalized and she had improved her ability to perform activities of daily living. Id. Dr. Snow similarly found that Plaintiff's knees were stable and balanced. See AR at 32, 390. Dr. Snow reviewed imaging of Plaintiff's knees in October 2015, which he reported was unremarkable, showing "no signs of loosening, complication, or periprosthetic fractures." Id. The ALJ reasonably interpreted this evidence as contradicting Plaintiff's testimony that she had experienced little to no improvement since her knee injuries, and accordingly did not err in rejecting Plaintiff's testimony on this basis.

### 2. Plaintiff's Testimony was Inconsistent with Statements She Made to Her Medical Providers

The ALJ also reasonably rejected Plaintiff's symptom testimony based on inconsistencies between her hearing testimony and statements to her medical providers. An ALJ may reject a claimant's symptom testimony when the claimant makes inconsistent statements concerning her symptoms. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

Contrary to Plaintiff's testimony that she had experienced minimal to no improvement, she told her physical therapist in August 2015 that she was about 75 percent improved. See AR at 458. Contrary to Plaintiff's testimony that she had minimal mobility and spent most of the day reclining and elevating her knees, she reported to Dr. Snow that she was going to the gym daily and doing water aerobics three times per week. See AR at 32, 390. The ALJ did not err in rejecting Plaintiff's testimony based on these inconsistencies.

### 3. The ALJ Erred in Rejecting Plaintiff's Testimony Based on Failure to Follow Treatment Recommendations

The ALJ's third reason for rejecting Plaintiff's symptom testimony is less convincing. "[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can constitute a sufficient reason for discrediting a claimant's symptom testimony. <u>Fair</u>, 885 F.2d at 603. Where the claimant provides a reason for noncompliance with treatment, however, the ALJ must address why that reason is insufficient or unbelievable. <u>See</u> <u>Trevizo</u>, 871 F.3d at 680.

The ALJ pointed to two treatment recommendations that he believed Plaintiff had not followed, but the evidence does not support his conclusion. First, in late August 2015, Dr. Snow recommended that Plaintiff remove wheat from her diet and gave her "resources for the abascal way diet" to see if this would reduce her overall pain. AR at 393-94. Plaintiff testified that she tried the diet for two to three months, but stopped when it "didn't seem like it was working." AR at 53-54. The ALJ concluded, without supporting evidence, that Plaintiff had not followed all restrictions included in the diet. <u>See</u> AR at 33. This was not a reasonable basis to reject Plaintiff's testimony.

Second, in October 2015, Dr. Snow recommended that Plaintiff see a food allergist and rheumatologist to further investigate her diet. AR at 390. Plaintiff testified that she had appointments with a rheumatologist and a food allergist scheduled within the month and a half following the hearing. <u>See</u> AR at 52-53. There are no medical records from these appointments in the record, from which the ALJ concluded that Plaintiff had not actually followed up with these providers. <u>See</u> AR at 33. If the ALJ felt that these

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 13

records were relevant, he should have requested them.  See Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) ("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.").  He did not, and instead unreasonably relied on an absence of evidence to decide that Plaintiff had not complied with treatment recommendations.

The ALJ's error here was nonetheless harmless.  The ALJ gave two valid reasons for rejecting Plaintiff's symptom testimony, both of which withstand scrutiny even after considering the ALJ's error.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (finding harmless error where ALJ included erroneous bases for discounting claimant's testimony because ALJ included other valid bases supporting the decision); Carmickle, 533 F.3d at 1162-63 (same).

## B.     Evaluation of the Medical Evidence

Plaintiff argues that the ALJ erred in assessing the medical evidence.  Dkt. 9 at 3-6.  Plaintiff references several medical opinions, but does not articulate why, under the substantial evidence standard of review, the Court should reverse the ALJ's weighing of those opinions.  See McCalmon v. Astrue, 319 F. App'x 658, 659-60 (9th Cir. 2009) (holding that while the Commissioner bears the burden of establishing medical improvement, the court may not set aside the ALJ's decision unless it "is not supported by substantial evidence or . . . is premised on legal error") (citing Bayliss, 427 F.3d at 1214 n.1).  At best, Plaintiff's argument appears to be that the medical evidence does not support the ALJ's determination that medical improvement occurred such that Plaintiff

was capable of full-time work, and was accordingly no longer disabled. See id. at 5-6. The Court disagrees.

Contrary to Plaintiff's argument, the ALJ cited numerous points in the medical evidence supporting his finding of medical improvement. Prior to her knee replacements, Dr. Snow documented that Plaintiff's imaging showed bone-on-bone contact. See AR at 31, 270. In his most recent medical record, Dr. Snow wrote that Plaintiff's knee replacement was stable. See AR at 31, 390. Dr. Snow documented that Plaintiff's range of motion in both knees was zero to 120 degrees, and 130 degrees flexion with force. Id. The ALJ reasonably interpreted this evidence as showing medical improvement.

Similarly, the ALJ pointed to records from Plaintiff's physical therapist indicating that she was significantly improved. As the ALJ noted, Plaintiff reported 75 percent improvement in her pain since surgery. AR at 31, 458, 462. Plaintiff reported swimming regularly. See AR at 31, 466. Again, the ALJ reasonably interpreted this evidence as showing medical improvement.

The ALJ further connected this evidence of medical improvement to his increased RFC. Importantly, the only significant difference between the original RFC and Plaintiff's increased RFC was that she no longer needed to lie down for one hour twice a day and elevate her legs at a 90 degree angle. See AR 26, 32. The ALJ noted that Plaintiff's increased activities, such as going to the gym daily and participating in water aerobics three times a week, supported the finding that she no longer needed to elevate her legs twice a day for an hour. See AR at 32-33. This was a rational interpretation of

the evidence, and the Court will not reverse it solely based on Plaintiff's alternative interpretation.  See Thomas, 278 F.3d at 954.

C.    **Assessment of Plaintiff's RFC since November 1, 2015**

Plaintiff's argument regarding the RFC is derivative of her other arguments as it is based on the claim that the ALJ failed to include all of the limitations arising from Plaintiff's symptom testimony and the medical evidence.  See Dkt. 9 at 15-16.  Because the Court has found that the ALJ did not err in his assessment of Plaintiff's testimony and the medical evidence, Plaintiff's argument fails.

VII.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 5th day of September, 2018.

*ROBERT S. LASNIK*
United States District Judge